1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  DELREO JOHNSON,

9                              Plaintiff,          Case No. C14-690 MJP-BAT

10          v.                                     **REPORT AND**
                                                   **RECOMMENDATION**
11  KING COUNTY, *et al.*,

12                              Defendants.

13          In this 42 U.S.C. § 1983 civil-rights action, pro se Plaintiff Delreo Johnson alleges that

14  Defendants David Bliss, Justin Poe, and Wesley Farris used excessive force against him while he

15  was detained at the King County Correctional Facility (KCCF) of the King County Department

16  of Adult and Juvenile Detention (DAJD).  He also alleges that unnamed County employees

17  failed to provide him with adequate medical attention and that he suffered nerve damage as a

18  result of the use of excessive force.  Dkt. 9.  He also alleges a violation of his Fourteenth

19  Amendment due process rights with regard to a disciplinary infraction hearing.  *Id.*  Defendants

20  David Bliss, Justin Poe, Wesley Farris, and King County move for summary judgment and

21  dismissal of Mr. Johnson's complaint with prejudice.  Dkt. 27.  The Court recommends

22  **GRANTING** Defendants' summary judgment motion and dismissing Mr. Johnson's claims with

23  prejudice.

REPORT AND RECOMMENDATION - 1

**FACTS**

Mr. Johnson alleges that on April 14, 2014, KCCF Sgt. David Bliss and KCCF Officers Justin Poe and Wesley Farris assaulted him by smashing his face on a wooden table for at least ten minutes, attempting to break is finger in every position, and while keeping a knee in his back, constantly jumping on him while his hands were in handcuffs. Dkt. 9, p. 3. He alleges that after he was assaulted, he was taken to the hole and left there without medical treatment for either his face or his hand for 29 days. On May 13, 2014, when he complained of a toothache, he was then asked what happened. He states his face was swollen for 12 days and that he suffered nerve damage to his hand. *Id.* He also contends that the assault was done in retaliation "only after [he] filed C14-352 RSL-JPD did these extraordinary things happen." *Id.*

According to Defendants, the incident in question occurred at 3:40 PM on April 14, 2014. At that time, Defendants David Bliss, Justin Poe, and Wesley Farris, along with other corrections officers, were conducting a cell search for a missing razor in the 8 North Upper B unit of the jail. Dkt. 29, Declaration of David Bliss, KCCF Sergeant, at p. 1, ¶¶ 2-3; Dkt. 30, Declaration of Justin Poe, KCCF Corrections Officer, at p. 1, ¶¶ 2-3; Dkt. 33, Declaration of Wesley Farris, KCCF Corrections Officer, at p. 1, ¶¶ 2-3. Mr. Johnson's cell was one of the cells involved in the search. Dkt. 29, Bliss Dec. at p. 2, ¶ 3; Dkt. 30, Poe Dec. at p. 2, ¶ 4; Dkt. 33, Farris Dec. at p. 2, ¶ 3. Mr. Johnson was patted down and asked to sit at the dayroom table while his cell was searched. Mr. Johnson was angry that the search was taking place and swore at the officers. Mr. Johnson was concerned that his property would be mixed up with the property of his cell mate. Dkt. 29, Bliss Dec. at p. 2, ¶ 3; Dkt. 33, Farris Dec. at p. 2, ¶ 3. He was also angry that extra linen was being removed from the cell. Dkt. 30, Poe Dec. at p. 2, ¶ 4-5.

//

1    Officer Poe states that he had determined before the search began that no one in Upper B

2    possessed a medical slip allowing them to have extra linen.  Because he is Crisis Intervention

3    Certified, Officer Poe tried to deescalate the situation by explaining this to Mr. Johnson, but Mr.

4    Johnson continued to be angry and agitated.  Dkt. 30, Poe Dec. at p. 2, ¶ 5.  The officers told Mr.

5    Johnson on more than one occasion to calm down and be quiet, but Mr. Johnson continued his

6    verbal assault and became more belligerent and upset.  Dkt. 32, Bliss Dec. at p. 2, ¶¶ 3-4; Dkt.

7    30, Poe Dec. at p. 2, ¶ 6; Dkt. 33, Farris Dec. at p. 2, ¶¶ 3-5.  Officer Farris directed Mr. Johnson

8    to face the wall to be handcuffed.  Dkt. 32, Bliss Dec. at p. 2, ¶ 4; Dkt. 30, Poe Dec. at p. 2, ¶ 6;

9    Dkt. 33, Farris Dec. at p. 2, ¶ 5.  This took place without incident and Mr. Johnson sat back

10    down.  *Id*.  Mr. Johnson was quiet for a few minutes before continuing his tirade.  Dkt. 33, Farris

11    Dec. at p. 2, ¶ 5.  After berating many of the officers present, Mr. Johnson stood up and started to

12    move aggressively in their direction.  Dkt. 30, Poe Dec. at p. 2, ¶¶ 7-8; Dkt. 33, Farris Dec. at p.

13    2, ¶¶ 5-6.  Officer Farris took hold of Mr. Johnson's left arm and then hooked his right hand

14    under his left arm, placing his hand across Mr. Johnson's upper arm.  Officer Farris bent Mr.

15    Johnson over the table and Officer Poe took control of Mr. Johnson's right arm also applying the

16    bent arm bar technique.  Dkt. 30, Poe Dec. at p. 2, ¶ 8; Dkt. 33, Farris Dec. at pp. 2-3, ¶ 6-7.  Mr.

17    Johnson struggled against them and because the table was an unsteady position to gain control,

18    Officers Farris and Poe took Mr. Johnson to the floor in a controlled manner.  Dkt. 30, Poe Dec.

19    at p. 2, ¶ 8; Dkt. 33, Farris Dec. at p. 3, ¶ 8.  According to Officers Poe and Farris, the bent arm

20    bar technique is a standard low-level strength procedure used to control an uncooperative inmate

21    posing a risk to officer safety or facility security.  Dkt. 30, Poe Dec. at pp. 2-3, ¶ 9; Dkt. 33,

22    Farris Dec. at p. 2, ¶ 6.

23    *//*

REPORT AND RECOMMENDATION - 3

1       Once Mr. Johnson was on the floor, Officer Farris placed his left knee over Mr.

2   Johnson's left shoulder and used it to apply pressure to Mr. Johnson's back to hold him on the

3   ground.  According to Officer Farris, this is a technique taught at the academy to handcuff

4   uncooperative inmates and to gain control of non-compliant inmates.  Officer Poe, who is a

5   physical force instructor, applied a wrist lock to Mr. Johnson's wrist to ensure compliance and to

6   allow Officer Farris to keep a minimum amount of weight on Mr. Johnson's upper back.  Dkt.

7   33, Farris Dec. at p. 3, ¶¶ 9-10.   Officers Farris and Poe state that the use of strength techniques

8   to gain control of an inmate posing an officer safety and security risk is a very low level of force

9   and does not involve any striking.  Officers Farris and Poe state that they did not strike, jump on,

10  throw Mr. Johnson to the floor, smash his head, or try to break his fingers.  They also did not

11  witness any other officer doing any of these things to Mr. Johnson.  *Id.*, ¶ 11; Dkt. 30, Poe Dec.

12  at pp. 2-3, ¶ 9; *see also* Dkt. 29, Bliss Dec. at p. 3, ¶ 8 (Sgt. Bliss did not see Officers Poe or

13  Farris strike Mr. Johnson or do anything that could have caused a significant injury).

14      Sergeant Bliss then directed Officers Poe and Farris to escort Mr. Johnson to a cell on the

15  11th Floor of the East wing of the jail.  Dkt. 29, Bliss Dec. at p. 2, ¶ 5; Dkt. 30, Poe Dec. at p. 3,

16  ¶ 10; Dkt. 33, Farris Dec. at p. 3, ¶ 12.  Mr. Johnson continued to struggle until they reached the

17  stairs and then he slowed down and appeared to walk cooperatively.  Dkt. 32, Bliss Dec. at p. 2,

18  ¶ 5.  During the escort to the new housing location, Mr. Johnson yelled at and threatened the

19  officers.  Dkt. 30, Poe Dec. at p. 3, ¶ 10; Dkt. 33, Farris Dec. at p. 3, ¶ 12.  Mr. Johnson was

20  placed into a cell and the handcuffs were removed through the pass through.  Dkt. 32, Bliss Dec.

21  at p. 2, ¶ 6; Dkt. 30, Poe Dec. at p. 3, ¶ 11; Dkt. 33, Farris Dec. at p. 3, ¶ 12.  As the officers left

22  they continued to hear Mr. Johnson's loud threats and taunts.  Dkt. 30, Poe Dec. at p. 3, ¶ 11;

23  Dkt. 33, Farris Dec. at p. 3, ¶ 12.

Sergeant Bliss, Officer Poe, and Officer Farris did not see any visible injuries on Mr. Johnson, however, it is standard procedure to call for medical staff when force has been used. Dkt. 33, Bliss Dec. at p. 2, ¶ 6; Dkt. 30, Poe Dec. at p. 3, ¶ 12; Dkt. 33, Farris Dec. at p. 4, ¶ 13. Sergeant Bliss gave Mr. Johnson some time to cool off and then called for nursing staff to come and assess him.  Dkt. 32, Bliss Dec. at pp. 2-3, ¶ 7; Dkt. 30, Poe Dec. at p. 3, ¶ 12; Dkt. 33, Farris Dec. at p. 4, ¶ 13.

Dr. Benjamin Sanders is the Medical Director of King Counties Jail Health Service (JHS).  JHS provides medical services to inmates at KCCF.  Dr. Sanders has reviewed the electronic medical record (known as "Pearl") for Mr. Johnson.  Based on his review of Mr. Johnson's medical records, Dr. Sanders notes that Registered Nurse Janise Temko saw Mr. Johnson at around 7:45 PM on April 14, 2014, at which time Mr. Johnson reported cheek and back pain.  Nurse Temko observed slight swelling of the right cheek, Mr. Johnson was alert and standing without problem, and there is no indication that Mr. Johnson made any complaint about his hand.  Dkt. 28, Declaration of Benjamin Sanders at p. 1-2, ¶¶ 2-3, 7.

Mr. Johnson was next seen on May 13, 2014 by Registered Nurse Casey Dooley regarding dental pain and Mr. Johnson requested removal of a tooth.  Dkt. 28, Dec. of Sanders at pp. 2-3, ¶ 8. Mr. Johnson was scheduled to see a doctor for a dental consultation.  No facial swelling was observed by the nurse treating him and there is no note regarding a report of hand or wrist pain by Mr. Johnson.  *Id.*

Later that day, Mr. Johnson was seen by Dr. Jones-Vanderleest for hypertension, dental pain, and lower back pain.  Dkt. 28, Dec. of Sanders at p. 3, ¶ 9.  Mr. Johnson also reported numbness in his right hand and tenderness in his right temple.  Dr. Jones-Vanderleest performed a neurological examination and the result revealed some irritation to the nerves of the right hand,

1  which may have multiple causes.  The doctor advised that the numbness would likely resolve

2  on its own and, if not, Mr. Johnson was to follow up with his primary care physician.  No

3  diagnosis of compressed nerve damage was made by Dr. Jones-Vanderleest.  Mr. Johnson was

4  given a prescription of Ibuprofen for his dental pain.  *Id.*

5       Although Mr. Johnson submitted medical kites after the incident on April 14, 2014, none

6  of the kites or associated medical notes mention wrist or hand pain, they instead document his

7  complaints of dental pain and treatment for that pain.  Dkt. 28, Dec. of Sanders at p. 3, ¶ 10.

8                               **DISCUSSION**

9  **A.      Fourth Amendment – Excessive Force**

10      The Due Process Clause protects pretrial detainees from the use of excessive force that

11  amounts to punishment.  *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).  "Not every push or

12  shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the

13  Fourth Amendment.  *Id.*, 490 U.S. at 396-397 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d

14  Cir. 1973)).

15      The Fourth Amendment sets the "applicable constitutional limitations" for considering

16  claims of excessive force during a pretrial detention.  *Pierce v. Multnomah County*, 76 F.3d

17  1032, 1043 (9th Cir. 1996).  Thus, though a pretrial detainee's excessive force claim arises under

18  the Due Process Clause, the claim is appropriately analyzed under the Fourth Amendment's

19  "objective reasonableness" standard.  *Graham*, 490 U.S. at 395.  This standard "requires a

20  careful balancing of 'the nature and quality of the intrusion on the individual's Fourth

21  Amendment interests' against the countervailing government interests at stake."  *Id.* at 396

22  (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

23  *//*

REPORT AND RECOMMENDATION - 6

1    In determining whether the use of force against a prisoner violates the Eighth

2    Amendment, the core inquiry is whether the force was applied "in a good faith effort to maintain

3    or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503

4    U.S. 1, 6-7 (1992).  In order to determine whether force is excessive and violative of the Eighth

5    Amendment, the court must evaluate both the objective and subjective components of the alleged

6    violation.  *Id.*  Therefore, the extent of the injury suffered by the plaintiff is a relevant but not

7    dispositive factor in determining whether the force used was appropriate.  *Id.*  However, the

8    Eighth Amendment does not reach *de minimis* uses of physical force.  *Id.*

9    The subjective component relates to whether or not the defendants had a wanton state of

10   mind when they engaged in the use of force.  In evaluating whether the use of force was wanton

11   or unnecessary, the court should consider the need for the application of force, the relationship

12   between that need and the amount of force used, the threat reasonably perceived by the

13   defendants, and any efforts made to temper the severity of a forceful response.  *Id.*

14   Viewing the evidence provided in the light most favorable to Mr. Johnson, the

15   undersigned concludes that Mr. Johnson has failed to establish a genuine issue of material fact as

16   to the need to use force and the amount of force used.  The record reflects that during a standard

17   cell search, Mr. Johnson was belligerent, failed to follow officer directives, berated the officers,

18   and moved aggressively toward the officers.  On the same day, Mr. Johnson was cleared by

19   medical staff with only a slight swelling to his cheek and with no complaints of any other injury.

20   When he was next seen about one month later for hypertension, dental pain, and lower back pain,

21   Mr. Johnson reported numbness in his right hand, particularly when writing, and tenderness in

22   his right temple.  No visible injury was noted and a neurological examination revealed minor

23   irritation of unknown origin to the nerves of Mr. Johnson's right hand.  There was no diagnosis

1   of nerve damage.  The treating physician advised Mr. Johnson that the numbness would likely

2   resolve on its own and if it did not, Mr. Johnson was to follow up with his primary care

3   physician.  Mr. Johnson made no complaints of wrist or hand pain after April 14, 2014.

4           The evidence reflects that the low level strength techniques employed by Sgt. Bliss and

5   Officers Farris and Poe to gain control of Mr. Johnson was reasonable and necessary to maintain

6   security and to ensure the safety of the officers and Mr. Johnson.  Mr. Johnson has failed to show

7   that any of the defendants used force maliciously and sadistically for the purpose of causing

8   harm.   Accordingly, Mr. Johnson's Fourth Amendment excessive force claims should be

9   dismissed.

10          Based on the same facts, Mr. Johnson also alleges that Defendants engaged in the state-

11  law civil tort of assault.  Dkt. 9, p. 3.  For the reasons noted above, this claim should also be

12  dismissed.  *See Anderson v. City of Bainbridge Island*, 472 F. App'x 538, 540 (9th Cir. 2012)

13  (assault and battery claim dismissed where force was not excessive); *Davis v. City of Seattle*, No.

14  C13-0895JLR, 2014 WL 3810574, at *12 (W.D. Wash. Aug. 1, 2014) (assault claim precluded

15  where force used was reasonable).

16  **B.      Municipal Liability – King County**

17          For a municipality to be liable under 42 U.S.C. § 1983, the underlying challenged

18  conduct must be performed pursuant to an official municipal "policy" or a well-established

19  municipal "custom."  *Monell v. New York City Dept. of Soc. Servs*., 436 U.S. 658, 690–91, 98

20  S.Ct. 2018, 56 L.Ed.2d 611 (1978).  To state a prima facie Section 1983 claim against a

21  municipality, a plaintiff must present evidence tracing the alleged violation to a "policy

22  statement, ordinance, regulation, or decision" promulgated by the municipality's decision-

23  making body, *id*., or to a municipal custom that is "so widespread as to have the force of law."

REPORT AND RECOMMENDATION - 8

1    *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).  Additionally, a plaintiff

2    "must demonstrate a direct causal link between the municipal action and the deprivation of

3    federal rights."  *Id*.  This causation requirement precludes municipal respondeat superior liability

4    for Section 1983 violations.  Section 1983 respondeat superior liability for municipalities was

5    considered and rejected in *Monell* and has been "consistently refused" since.  *Id.* at 403; see also

6    *Monell*, 436 U.S. at 691–94.

7           Mr. Johnson has identified no municipal policy, custom or practice responsible for his

8    alleged constitutional injury.  In fact, other than naming King County within the caption of his

9    complaint, Mr. Johnson makes no allegations against the County.  To permit Mr. Johnson's

10   Section 1983 claim against King County based solely on the county's employment relationship

11   with the individually named officers would result in "de facto respondeat superior liability" and

12   his claims must therefore be dismissed.

13   **C.     Eighth Amendment- Medical Care**

14          A prisoner can establish an Eighth Amendment violation arising from deficient medical

15   care if he can prove that prison officials were deliberately indifferent to a serious medical need.

16   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A finding of deliberate indifference involves the

17   examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the

18   nature of the defendant's responses to that need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

19   Cir.1992), overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133

20   (1997).  A "serious" medical need exists if the failure to treat a prisoner's condition could lead to

21   further injury or the "unnecessary and wanton infliction of pain."  *Id*. (*citing Estelle*, 429 U.S. at

22   104).  If the medical needs are serious, the plaintiff must show that the defendants acted with

23   deliberate indifference to those needs.  *Estelle*, 429 U.S. at 104.  The plaintiff must demonstrate

1    that the prison medical staff knew of and disregarded an excessive risk to his health.  *Farmer v.*

2    *Brennan*, 511 U.S. 825, 837 (1994).

3        "Prison officials are deliberately indifferent to a prisoner's serious medical needs when

4    they 'deny, delay, or intentionally interfere with medical treatment'" or the express orders of a

5    prisoner's prior physician for reasons unrelated to the medical needs of the prisoner.  *Hamilton v.*

6    *Endell*, 981 F.2d 1062, 1066 (9th Cir.1992) (overruled on other grounds); *Hunt v. Dental Dept.*,

7    865 F.2d 198, 201 (9th Cir .1989) (citations omitted).  In making such a showing, the plaintiff

8    should allege a purposeful act or omission by the defendant.  *McGuckin*, 974 F.2d at 1060.

9    When an inmate alleges an Eighth Amendment violation for inadequate medical care based upon

10   delays in receiving treatment, he must demonstrate that he suffered substantial harm as a result of

11   the delay.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990).

12       Viewing the record in the light most favorable to Mr. Johnson, the undersigned concludes

13   that Mr. Johnson has failed to establish a genuine issue of material fact as to whether Defendants

14   were deliberately indifferent to his serious medical needs.  Although Mr. Johnson alleges that he

15   was thrown into the hole and denied any medical treatment for twelve days, the record reflects

16   that he was in fact seen by a nurse on the day of the incident and at that time, only a slight

17   swelling to his cheek was noted.  Dkt. 28, Dec. of Sanders p. 2, ¶ 7.  Mr. Johnson was seen by

18   medical staff about one month later to address his dental issues.  At that time, a neurological

19   examination was performed on his right hand.  *Id.*, Dec. of Sanders pp. 2-3, ¶¶ 8-9.  Mr. Johnson

20   was seen by staff thereafter on a number of occasions regarding dental issues.  *Id.*, Dec. of

21   Sanders p. 3, ¶ 11.  Such facts do not support a claim of deliberate indifference.  Mr. Johnson

22   provides no evidence to the contrary.

23   *//*

REPORT AND RECOMMENDATION - 10

1    Similarly and to the extent he has attempted to assert such a claim, Mr. Johnson cannot

2    support a state law malpractice action because he lacks medical testimony establishing a

3    violation of the applicable standard of care.  *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wash.2d

4    438, 449 (1983) (expert testimony necessary to establish the standard of care); *Guile v. Ballard*

5    *Cmty. Hosp.*, 70 Wn. App. 18, 25 (1993) (for medical malpractice cases, expert testimony is

6    generally required to prove causation).

7    **D.      Due Process – Infraction Hearing**

8    Mr. Johnson claims that he was denied due process because the disciplinary hearing

9    officers did not talk to any officers other than Sgt. Bliss and rendered their decision within two

10   hours.  Dkt. 9 at p. 4.

11   The Due Process Clause protects prisoners from being deprived of liberty without due

12   process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Where a protectable liberty

13   interest exists, the Supreme Court has set out the following procedural due process requirements

14   for disciplinary detention of a prisoner: (1) written notice of the charges; (2) at least 24 hours

15   between the time the prisoner receives written notice and the time of the hearing, so that the

16   prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

17   rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in

18   his defense, when permitting him to do so would not be unduly hazardous to institutional safety

19   or correctional goals; (5) legal assistance to the prisoner where the prisoner is illiterate or the

20   issues presented are legally complex.  *Wolff*, 418 U.S. at 556.  The record reflects that Mr.

21   Johnson was given notice of the infraction, an opportunity to be heard, an opportunity to identify

22   witnesses, and an opportunity to appeal the disciplinary decision.  Dkt. 34, Declaration of

23   Kimberly Frederick, Exhibit A.  Mr. Johnson therefore received all of the process to which he

1   was entitled under federal law and his due process claim should be dismissed.

2   **E.      Retaliation**

3          An actionable claim for retaliation requires an inmate petitioner in a civil rights action to

4   first establish that the type of activity the prisoner engaged in was constitutionally protected.

5   *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985).  If the plaintiff can demonstrate the

6   existence of a constitutional right, then the plaintiff must prove four elements: (1) prison officials

7   took adverse action against him; (2) the adverse action was taken because he engaged in

8   protected conduct; (3) the adverse action chilled his First Amendment rights; and (4) the adverse

9   action did not serve a legitimate penological purpose or was not narrowly tailored enough to

10  achieve such goals.  *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

11         Mr. Johnson alleges that Defendants assaulted him and denied him appropriate medical

12  care only after he filed a civil rights lawsuit in Case No. C14-352 RSL-JPD.  In that case, Mr.

13  Johnson purported to sue the State of Washington, the King County prosecutor, and two defense

14  attorneys.  He alleged in that lawsuit that he had been improperly charged in both Seattle

15  Municipal Court and King County Superior Court with the same offense.  Dkt. 6 in Case No.

16  C14-352 RSL-JPD.  In that case, Mr. Johnson was given leave to file an amended complaint but

17  the case was ultimately dismissed for Mr. Johnson's failure to prosecute.  Dkts. 16 and 20

18  therein.

19         Mr. Johnson provides no evidence from which it may be inferred that any of the

20  Defendants named in this case were aware of and took adverse action against him because of his

21  filings in Case No. C14-352 RSL-JPD.  Therefore, this claim should be dismissed.

22  **F.      Qualified Immunity**

23         Defendants also argue that they are entitled to qualified immunity from damages.  Prison

REPORT AND RECOMMENDATION - 12

1   officials are "shielded from liability for civil damages insofar as their conduct does not violate

2   clearly established statutory or constitutional rights of which a reasonable person would have

3   known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity

4   defense, the Court must determine: (1) whether a constitutional right would have been violated

5   on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2)

6   whether the right was clearly established when viewed in the specific context of the case.

7   *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining

8   whether a right is clearly established is whether it would be clear to a reasonable officer that his

9   conduct was unlawful in the situation he confronted." *Id*. In analyzing a qualified immunity

10  defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs

11  of the qualified immunity analysis should be addressed first in light of the circumstances in the

12  particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

13      As noted above, the Court has found that Mr. Johnson has failed to present a triable issue

14  of fact as to any of his constitutional claims. Therefore, the Court need not further address the

15  issue of qualified immunity.

16                                       **CONCLUSION**

17      The Court recommends that Defendants' motion for summary judgment be **GRANTED**

18  and this action be **DISMISSED WITH PREJUDICE.**

19      Any objections to this Recommendation must be filed and served upon all parties no later

20  than **Monday, May 11, 2015.** The Clerk should note the matter for **Wednesday, May 13, 2015,**

21  as ready for the District Judge's consideration if no objection is filed. If objections are filed, any

22  response is due within 14 days after being served with the objections. A party filing an objection

23  must note the matter for the Court's consideration 14 days from the date the objection is filed

REPORT AND RECOMMENDATION - 13

1  and served.  The matter will then be ready for the Court's consideration on the date the response

2  is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely

3  object may affect the right to appeal.

4      DATED this  20th  day of April, 2015.

5

6                              BRIAN A. TSUCHIDA
                              United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 14